Willie L. WILLIAMS, Jr., Appellant,

v.

Jesse BROWN, Secretary of Veterans
Affairs, Appellee.

No. 91–901.

United States Court of Veterans Appeals.

Feb. 18, 1993.

As Amended April 6, 1993.

Barbara J. Meacham, Gary, IN, was on
the brief, for appellant.

James A. Endicott, Jr., Gen. Counsel,
Barry M. Tapp, Asst. Gen. Counsel, Pamela
L. Wood, Deputy Asst. Gen. Counsel, and
William S. Mailander, were on the plead-
ings, for appellee.

Before NEBEKER, Chief Judge, and
FARLEY and STEINBERG, Associate
Judges.

NEBEKER, Chief Judge:

This case presents for review a February
1, 1991, Board of Veterans' Appeals (BVA
or Board) decision which denied appellant's
claim for entitlement to service connection
for post-traumatic stress disorder (PTSD).
Upon consideration of the pleadings and
the record on appeal, the Court concludes
that the Board failed to provide an ade-
quate statement of reasons or bases, as
required by *Gilbert v. Derwinski*, 1 Vet.

App. 49 (1990), for rejecting statements by medical personnel diagnosing appellant with PTSD; and failed to consider the application of the evidentiary equipoise rule of 38 U.S.C.A. § 5107(b) (West 1991).

## I.

Appellant was a member of the United States Army from August 1965 to July 1968, and served a tour in Vietnam. His induction examination noted no psychiatric abnormalities. R. at 2, 4. On his separation examination, however, he reported suffering from "depression or excessive worry" and "nervous trouble"; the medical examiner noted "anxiety-OK." R. at 6, 7.

In 1984, he filed a claim for Veterans' Administration (now Department of Veterans Affairs) (VA) compensation for a service-connected "mental or nervous disorder." R. at 11, 13. The Regional Office (RO) denied service connection after finding that his "[s]ervice medical records [showed] no complaint of, treatment for or diagnosis of a ... nervous condition." R. at 14. He amended his claim on December 24, 1985, and sought service connection for PTSD. The RO then asked him to describe any stressors he experienced during combat. R. at 17. In response, he described how his unit was ambushed by hostile fire, how he saw his friend, Lakeland, shot between the eyes, and his feelings of helplessness while carrying Lakeland's dead body. R. at 19–20.

In February 1986, he was given a special psychiatric examination by a psychologist, who diagnosed his condition as an adjustment disorder stemming from unemployment. R. at 27, 28. The psychologist noted appellant's combat experiences, but stated, "There is no evidence of hallucinations, delusions or other psychotic symptomatology present." *Id.* Appellant was subsequently denied service connection for PTSD. R. at 29–30. He did not appeal.

In March 1989, he was hospitalized for recurring hiccups along with gastric discomfort. The examining physician, Dr. Dan Jablonski, M.D., noted the probability that a "strong psychological component" was associated with appellant's hiccups.

R. at 33. In April 1989, Dr. Jablonski examined appellant again and noted the possibility of an "adjustment disorder stemming from Vietnam" or possibly PTSD. He referred appellant to a VA staff psychologist, Michael Daly, Ph.D., for a consultation.

Dr. Daly diagnosed appellant with "PTSD, chronic, delayed onset." R. at 35. Dr. Daly's examination report remarked on appellant's heavy combat exposure and frequent contact with the dead and wounded. He stated that appellant reported "frequent combat related nightmares," "described several combat traumatic events which would be classified as outside the range of human experience," and "[m]eets DSM III–R [Diagnostic and Statistical Manual of Mental Disorders] criteria for PTSD." R. at 35. He documented the following observations to support his diagnosis: "impacted grief, crying when talking about dead friends in Vietnam," "socially isolated," "nightmares and awoke in cold sweats," "[increased] autonomic arousal," "insomnia," "rage," "intrusive thoughts," "emotional numbness," "avoidance behavior," and a "sense of a foreshortened future." R. at 35. At Dr. Daly's suggestion, appellant obtained individual and group therapy from Donald J. Wam, a VA registered nurse therapist.

Appellant reopened his claim on April 4, 1989. The RO requested that a Board of Psychiatric Specialists (BPS) examine the veteran and "offer an opinion as to whether a diagnosis of PTSD is warranted." R. at 37. The BPS exam was performed by Dr. Luca Alverno, M.D., and the report indicated that a Dr. Craig Larson "will be reviewing the record and interview the veteran at a different time." R. at 38. Dr. Alverno stated that appellant had recurrent dreams of Vietnam; that after leaving Vietnam, "he was having these dreams almost everynight [sic]"; that he sleeps poorly; and that he otherwise "has no feelings for sex and has a poor appetite." *Id.* Dr. Alverno further stated that appellant acknowledged experiencing "hallucinatory perceptions and hiccup[s] as a consequence of drinking." R. at 39. No other symp-

toms of psychosis were noted. Dr. Alverno concluded that "[a]lthough the veteran might have been in contact with seriously stressful situations during the Vietnam campaign, he did not exhibit the full symptoms justifying [a diagnosis of PTSD]." *Id.* What appears to be a signature of Dr. Craig Larson appears at the end of the report. R. at 40. In August 1989, VA issued a rating decision again denying service connection for PTSD.

Appellant subsequently reopened his claim, submitting a report, dated December 12, 1989, from Mr. Wam, who had been treating him for his psychological disorder. In Mr. Wam's opinion, appellant was "experiencing PTSD per DSM III-R." R. at 46. Mr. Wam listed numerous specific symptoms and noted that appellant "shares his combat experiences/feelings in a soft tone of voice, blunted affect, at times breaking down and crying when talking about loss of friends." *Id.* The VA again denied the claim by relying upon the July 1989 BPS exam. R. at 48–49.

In February 1990, Dr. Daly, the VA staff psychologist who had examined appellant earlier, prepared a second report, in which he concurred with Mr. Wam's findings and opinion. R. at 50. Dr. Daly further noted that "[p]art of Mr. Williams problem is his tendency to minimize [and] deny pertinent symptoms because he would prefer to avoid any stimuli associated with his Vietnam experience." R. at 50. Dr. Daly noted that this behavior was not in appellant's best interest and explained that it was a "psychological defense against feeling the deep pain and grief that are buried inside his mind." He further opined that appellant's difficulties discussing his Vietnam traumas were consistent with the DSM–III–R criteria for a PTSD diagnosis. R. at 51.

A subsequent RO decision considered Dr. Daly's letter, but again denied service connection for PTSD. On August 10, 1990, he appealed his claim to the BVA. That appeal disputed the July 1989 BPS examination as unrepresentative of his condition:

I wasn't asked very much about Vietnam and did not want to talk about it

anyway. Much of [the BPS exam] dealt with how I grew up. I never said I ever had hallucinations due to drinking.... I do not have any drinking problems and none of my symptoms are related to anything but PTSD. In regards to whether I have a startle response, hypervigilance, re-experiencing stressful situations, I was never asked.

R. at 60. The Board affirmed the RO decision on February 1, 1991.

## II

Section 7104(d)(1) of title 38, United States Code Annotated (West 1991), provides that each Board decision must include "a written statement of the Board's findings and conclusions, and the reasons or bases for those findings and conclusions, on all material issues of fact and law presented on the record...." The material issues of fact in appellant's case are reflected in two VA examinations, one in 1986 and one in 1989, stating that appellant does not have PTSD; and statements by a VA psychiatrist and a VA therapist that appellant does have PTSD.

The Board therefore had a statutory obligation to provide reasons or bases for its decision to reject the two diagnoses of PTSD and embrace the two diagnoses to the contrary. We hold that the reasons or bases outlined by the Board do not provide an adequate record from which this Court can determine whether appellant's case was erroneously decided.

The Board first explained its reasons for rejecting the veteran's testimony and the diagnoses of PTSD:

We are troubled ... by the fact that neither of the specific individuals the veteran mentioned as having been killed in his unit are identified in the list of names appearing on the Vietnam Veterans Memorial. This fact indicates to us not so much that there is a fundamental problem with the veteran's sincerity, but that the accuracy of his memory is impaired. This in turn creates problems in relying upon diagnostic assessments based principally upon history supplied by the veteran. While the record shows that a

registered nurse and a social worker are of the opinion that the veteran has post-traumatic stress disorder, these opinions are primarily based upon history from the veteran.

*Willie L. Williams, Jr.,* BVA 91–3383, at 5–6 (Feb. 1, 1991). First, the Court notes that Dr. Daly is not a social worker, but holds a Ph.D. in psychology; the Board had no basis for mischaracterizing Dr. Daly's qualifications. Second, if the opinions by Dr. Daly and Mr. Wam are to be disbelieved because they are based on statements provided by the veteran, the same must be true of the diagnoses by the two BPS examiners. A review of the record does not indicate that the BPS diagnoses were based on any data other than statements provided by the veteran. Moreover, Mr. Wam's diagnosis was based on numerous therapy sessions with appellant. The most objective statement the Court discerns is the diagnosis of PTSD by Dr. Daly given after appellant reported to the hospital complaining of hiccups and gastric problems in 1989. R. at 35.

The Board's second reason for rejecting the two diagnoses of PTSD was that neither

specifically delineates [sic] how each element of the diagnostic criteria for post-traumatic stress disorder is met.... The reason why the psychiatrists who examined the veteran in 1986 and 1989 have concluded that the veteran did not have post-traumatic stress disorder is that the other symptoms required to support this diagnosis were not present.

*Willie L. Williams, Jr.,* BVA 91–3383, at 6 (Feb. 1, 1991). Although it is true that neither Dr. Daly nor Mr. Wam specifically delineated the criteria for PTSD, they were never asked to do so. The RO, on the other hand, asked the BPS to specifically delineate appellant's history and provide a full description of past and present symptoms. R. at 37.

Secondly, as appellant notes in his brief, Dr. Daly and Mr. Wam both point to criteria indicative of PTSD in their statements: "frequent combat related nightmares," traumatic combat events "classified as out-side the range of human experience," "[m]eets DSM III–R criteria for PTSD," "impacted grief, crying when talking about dead friends in Vietnam," "socially isolated," "nightmares and awoke in cold sweats," "[increased] autonomic arousal," "insomnia," "rage," "intrusive thoughts," "emotional numbness," "avoidance behavior," "sense of a foreshortened future," and appellant "shares his combat experiences/feelings in a soft tone of voice, blunted effect, at times breaking down and crying when talking about loss of friends." R. at 35, 46. The Board did not provide reasons or bases why these symptoms, which generally accord with the DMS III–R criteria for PTSD, were insufficient to indicate a diagnosis of PTSD.

■ The Board further erred when it stated that because Dr. Daly's and Mr. Wam's opinions "do not establish the existence of all the symptoms required under the diagnostic criteria for the disorder in question, they do not ... cause us to question the diagnostic assessments reached by the examining psychiatrists." Nowhere is it provided in law or regulation that opinions by the examining psychiatrists are inherently more persuasive than that of other competent mental health professionals. The Board cannot take the opinion of the examining psychiatrists as fact and then require the appellant to rebut such. If the Board believes the opinions of the examining psychiatrists to be more persuasive, it must explain why this is so.

■ Lastly, the Board failed to address the provisions of 38 U.S.C.A. § 5107(b) which read, in pertinent part:

When, after consideration of all evidence and material of record ... there is an approximate balance of positive and negative evidence regarding the merits of an issue material to the determination of the matter, the benefit of the doubt in resolving each such issue shall be given to the claimant.

In a case where there is significant evidence in support of an appellant's claim, as there is here, the Board must provide a satisfactory explanation as to why the evi-

dence was not in equipoise. *See Gilbert,* 1 Vet.App. at 54 (1990).

Accordingly, we REVERSE the decision of the BVA and REMAND the matter for readjudication consistent with this opinion. *See Fletcher v. Derwinski,* 1 Vet.App. 394, 397 (1991) (Court expects critical examination to occur on remand, in which Board will reexamine evidence of record, seek additional evidence as necessary, and issue well-supported decision). On remand, both parties are free to submit additional evidence.