**Lewis E. GOODSELL, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

**No. 91–1074.**

United States Court of Veterans Appeals.

April 23, 1993.

As Amended Sept. 13, 1993.

Lewis E. Goodsell, pro se.

James A. Endicott, Jr., Gen. Counsel, David T. Landers, Acting Asst. Gen. Counsel, Pamela Wood, Deputy Asst. Gen. Counsel, and John C. Winkfield, Washington, DC, were on the pleadings, for appellee.

Before NEBEKER, Chief Judge, and FARLEY and STEINBERG, Associate Judges.

STEINBERG, Associate Judge:

The appellant, World War II era veteran Lewis E. Goodsell, appeals from a February 21, 1991, Board of Veterans' Appeals (BVA or Board) decision denying service connection for pulmonary tuberculosis (PTB). The Secretary of Veterans Affairs (Secretary) has moved for summary affirmance.

## I. Background

The veteran served on active duty in the U.S. Army from October 1942 to November 1945. R. at 1. Service medical records do not reveal any complaints or findings of pulmonary problems during service. According to histories related in later medical reports, the veteran in September 1950 either applied to the National Guard or was "called back" to active duty with the National Guard. R. at 61, 71. X rays taken in conjunction with a September 16, 1950, medical examination prior to his entry into the Guard revealed active PTB. R. at 50, 61, 71. The veteran was diagnosed with chronic PTB, active, and hospitalized at a Veterans' Administration (now Department of Veterans Affairs) (VA) hospital from November to December 1950 and at the Fitzsimons Army Hospital (FAH) from December 1950 to December 1951. R. at 63, 69, 70-71.

The medical records, including X-ray reports, from the 1950 VA hospitalization and the 1950-51 year-long FAH hospitalization do not indicate the date of onset of PTB. In the December 1951 FAH discharge report, the examiner noted:

EXPOSURE TO TUBERCULOSIS: Patient states that in 1946 and 1947 he was working in a filling station with a man who later found that he had [PTB] at that time. Therefore, patient was more or less exposed during that period.

R. at 70. However, the examiner did not express any conclusion as to the cause or date of onset of PTB.

In September 1951, the veteran applied to a VA regional office (RO) for service-connected disability compensation for PTB. R. at 65. In December 1951, the RO obtained a medical opinion from the FAH Office of the Chief of Chest Disease Sec-

tion based on review of several X rays of the veteran taken between 1942 and 1951. R. at 73-74. That opinion stated that no evidence of primary or reinfection-type tuberculosis was shown on X rays from 1942, 1943, and 1945, but noted that the 1945 separation X ray was "of rather poor quality and somewhat hazy", and that the 1943 X ray revealed "a slight exaggeration of bronchial vascular markings towards both lung bases". R. at 73. The opinion concluded that the first evidence of PTB had been on November 21, 1950, VA X rays, which had revealed a "moderately advanced reinfection type of tuberculosis". R. at 74. ("Primary" tuberculosis is a tuberculosis that manifests when the patient is first infected; "reinfection" or "postprimary" tuberculosis is a "[f]resh infection (a reinfection) of the lungs of a person who has had an earlier and probably subclinical attack of tuberculosis", DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1770 (27th ed. 1988).) No opinion was expressed as to cause or date of onset. The opinion did not mention any September 1950 X rays.

On January 9, 1952, the RO denied service connection for PTB. R. at 77-78. The veteran did not appeal that decision. X rays taken by VA in 1954 revealed "chronic, moderately advanced, inactive" PTB. R. at 85. PTB was again noted on VA X rays in 1983. R. at 95. In 1989, the veteran sought to reopen his claim for service-connected disability compensation for PTB. He submitted an April 1989 letter from Dr. George Bedell, a University of Iowa physician specializing in pulmonary diseases, who opined:

[I]t would appear that there was no radiographic evidence of reactivation tuberculosis at the time you left the service. However, reactivation could have been present and could have been radiographically nondeterminable in 1945.

As an expert in tuberculosis I find it difficult to pinpoint the exact time of your reactivation tuberculosis. I think it most likely reactivated during the period 1945 to 1950, but I think there is a possibility that the reactivation occurred during the 1942–1945 time period. [sic] Al-

though it was not radiographically apparent at the time of your discharge in 1945. I am not the individual who makes a decision regarding service[-]connected disability for the VA, but my recommendation to that individual would be that on the basis of probable evidence that you developed reactivation tuberculosis during the time that you served in the army from 1942–1945 that your reactivation tuberculosis should be regarded as a service[-]connected problem.

R. at 113–14. The veteran also submitted an April 1989 letter from Dr. Craig Bainbridge, a private pulmonary physician, who concluded:

[A]s I read the report of your chest film on 11–21–1950, there was a moderate amount of "caseo-nodose" disease present in the apical regions of both lung fields. Further, there was a lesion on the right above the level of the second anterior rib and a lesion on the left which was within the circle of the first rib. This, of course, suggests active tuberculosis which had recurred sometime in the interval.

In my medical opinion, it is somewhat probable that you probably did have the tuberculosis at the time of your separation, although I cannot say that with 100% accuracy.

R. at 115.

In May 1989, the RO denied the claim. R. at 119. The veteran thereafter submitted an October 1989 letter from Dr. John Spurzem, a pulmonary physician at the University of Nebraska, who stated:

[T]here is no way to predict with any certainty when the active infection with tuberculosis was acquired. Often times a patient will be able to pinpoint a specific exposure to other infected persons. It is conceivable that you acquired the tuberculosis infection during your period of service in 1943–1945. However, without further data, data which likely [do] not exist such as tuberculosis skin testing, it is impossible to state when your active infection was acquired.

R. at 129. In January 1990, the veteran testified under oath at a hearing before the RO. At the hearing, he testified, inter alia, that he had been a meat and dairy inspector in service, and that he believed that his tuberculosis had been incurred in service. R. at 142–49.

In the February 1991 decision currently here on appeal, the BVA denied the veteran's claim, concluding that the evidence received since 1952 did not present a "new factual basis" for allowing the claim. *Lewis E. Goodsell*, BVA 91-____, at 5 (Feb. 21, 1991). The Board stated:

The Board notes that the evidence clearly establishes the presence of [PTB] in September 1950. While it is likely that the disorder had an earlier onset, that onset is *not shown* to be at such a time or under such circumstances that it may be presumed to have been incurred in service ... The Board also finds it significant that, in [FAH] records received by the VA after the January 1952 rating action, it was noted that the veteran reported having been exposed to an individual with [PTB] at some time in 1946 or 1947 while he was working in a filling station. Thus, this strongly indicates that the veteran may have developed [PTB] as a result of that exposure. Hence, such evidence would clearly rebut any presumption of inservice incurrence.

*Goodsell*, BVA, 91-____, at 4 (emphasis added).

## II. Analysis

### A. Readjudication Based on New and Material Evidence

Pursuant to 38 U.S.C.A. § 5108 (West 1991), the Secretary must reopen a previously and finally disallowed claim when "new and material evidence" is presented or secured with respect to that claim. On claims to reopen previously and finally disallowed claims, the BVA must conduct a "two-step analysis". *Manio v. Derwinski*, 1 Vet.App. 140, 145 (1991). First, it must determine whether the evidence presented or secured since the prior final disallowance of the claim is "new and material". *Ibid.* If the evidence is new and material, the Board must then review the new evidence "in the context of" the

old to determine whether the prior disposition of the claim should be altered. *See Jones (McArthur) v. Derwinski*, 1 Vet. App. 210, 215 (1991). "New" evidence is evidence which is not "merely cumulative" of other evidence in the record. *Colvin v. Derwinski*, 1 Vet.App. 171, 174 (1991). Evidence is "material" when it is "relevant [to] and probative of the issue at hand" and there is "a reasonable possibility that the new evidence, when viewed in the context of all the evidence, both new and old, would change the outcome." *Colvin, supra.* In determining whether evidence is new and material, "the credibility of the evidence must be presumed." *Justus v. Principi*, 3 Vet.App. 510, 513 (1992).

The determination whether evidence is "new and material" is a conclusion of law which the Court reviews de novo under 38 U.S.C.A. § 7261(a)(1) (West 1991). *See Masors v. Derwinski*, 2 Vet.App. 181, 185 (1992); *Jones*, 1 Vet.App. at 213; *Colvin, supra.* The BVA decision is ambiguous as to whether the Board denied the claim on the basis that there was no new and material evidence to reopen or whether it reopened the claim and denied benefits based on review of all the evidence. For the reasons stated below, the Court holds that there was new and material evidence requiring the Board to reopen and readjudicate the claim.

Service connection for the PTB may be established by showing that it was initially manifest during the veteran's active service or that active PTB was manifest to a degree of 10% or more within the three-year presumption period following his separation from service. *See* 38 U.S.C.A. §§ 1110, 1112(a)(3) (West 1991); 38 C.F.R. §§ 3.303(b), 3.307(a)(3) (1992). Furthermore, when the disease was not initially manifested during service or within the applicable presumption period, "direct" service connection may nevertheless be established by evidence demonstrating that the disease was in fact incurred or aggravated during the veteran's service. *See* 38 U.S.C.A. § 1113(b) (West 1991); 38 C.F.R. § 3.303(d) (1992); *Cosman v. Principi*, 3 Vet.App. 503, 505 (1992); *Triplette v. Prin-*

*cipi*, 4 Vet.App. 45, 50 (1993); *Godfrey v. Derwinski*, 2 Vet.App. 352, 356 (1992); *Douglas v. Derwinski*, 2 Vet.App. 103, 108–09 (1992).

In the instant case, the evidence received by the RO since its prior final January 1952 denial of the claim includes medical opinions from pulmonary specialists that it is "possib[le]" or "somewhat probable" that active PTB was present at appellant's separation from service, and that it is "most likely" that the PTB was reactivated between 1945 and 1950. R. at 113–15. This evidence is not duplicative of any evidence previously in the record, and it is relevant to and probative of the issue of whether PTB was first manifest during service or manifest to the requisite degree within the presumption period, which in this case extends from November 1945 to November 1948. Furthermore, when viewed in the context of all the evidence, these medical opinions create a reasonable possibility of changing the outcome of the prior denial of the claim.

This Court's opinion in *Tubianosa v. Derwinski*, 3 Vet.App. 181 (1992), which was issued subsequent to the BVA decision currently on appeal, would not support a different result. In *Tubianosa*, the Court held that a 1971 statement from a public health official that the veteran had been diagnosed with PTB on a 1946 physical examination within the three-year presumption period was not new and material evidence sufficient to reopen a claim for service connection for PTB. *Id.* at 183–84. The Court based its conclusion on the provisions of 38 C.F.R. §§ 3.371(a)(1) and 3.371(c), which the Court held established that a private physician's diagnosis of PTB is competent to prove the existence of PTB only if such diagnosis is "confirmed by acceptable clinical, X-ray[,] or laboratory studies, or by findings of active [PTB] based upon acceptable hospital observation or treatment." *Ibid.* In a case such as the instant appeal, however, where the presence of PTB is established by VA and service department X rays, and where the private physicians' opinions are offered to establish not a diagnosis of PTB but rather

the probable date of onset of PTB, the rule announced in *Tubianosa* is inapplicable.

Accordingly, the private physicians' opinions in this case are competent evidence of the date of onset of the veteran's PTB, and, for the reasons stated above, are new and material. The Board was thus required to reopen the veteran's claim and readjudicate it on the basis of all the evidence, both old and new.

### B. Credibility and Probative Value Determinations

 The Board is required to provide a written statement of the reasons or bases for its findings and conclusions on all material issues of fact and law presented on the record; the statement must be adequate to enable a claimant to understand the precise basis for the Board's decision, as well as to facilitate review in this Court. *See* 38 U.S.C.A. § 7104(d)(1) (West 1991); *Simon v. Derwinski*, 2 Vet.App. 621, 622 (1992); *Masors*, 2 Vet.App. at 188; *Gilbert v. Derwinski*, 1 Vet.App. 49, 57 (1990). To comply with this requirement, the Board must analyze the credibility and probative value of the evidence, account for the evidence which it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any evidence favorable to the veteran. *See Abernathy v. Derwinski*, 2 Vet. App. 391, 394 (1992); *Hatlestad v. Derwinski*, 1 Vet.App. 164, 169 (1991) [*Hatlestad I*]; *Gilbert, supra.* Moreover, the Board may not rely on its own unsubstantiated opinion as a basis for a medical conclusion or for rejecting expert medical evidence in the record; rather, the Board's medical conclusions must be supported by independent medical evidence in the record or by adequate quotation from recognized medical treatises. *See Hatlestad v. Derwinski*, 3 Vet.App. 213, 217 (1992) [*Hatlestad II*]; *Colvin*, 1 Vet.App. at 175.

 In its February 1991 decision, the Board failed to evaluate the credibility and probative value of the statements from Drs. Bedell and Bainbridge indicating that it is possible or "somewhat probable" that active tuberculosis was present at the veteran's separation from service, and that it was "most likely" that active PTB arose between 1945 and 1950 (most of which period is within the three-year presumption period for service connection for PTB). This evidence, if believed, tends to show that the veteran's PTB was initially manifested either during service or, to a degree of 10% or more within the presumption period (active PTB warrants a 100% rating under 38 C.F.R. § 4.97, Diagnostic Codes 6701–6704, 6730 (1992)). Therefore, in denying the veteran's claim, the Board was required to explain its findings as to the credibility and probative value of this evidence, and its reasons for rejecting it. Remand is thus required for the Board to make such explicit findings. Furthermore, if on remand the Board rejects any medical conclusions in those physicians' statements, it must provide an adequate basis in independent medical evidence for doing so. *See Hatlestad II, supra; Colvin, supra.*

### C. Grounds for Rebutting the Presumption of Service Connection

The Board concluded that the evidence of the veteran's exposure to a person with PTB in 1946 or 1947 "would clearly rebut any presumption of inservice incurrence". *Goodsell*, BVA 91–____, at 4. As noted in part II.A., above, PTB will be presumed to have been incurred in service when active PTB is initially manifested to a degree of 10% or more within three years after separation from service. *See* 38 U.S.C.A. § 1112(a)(3); 38 C.F.R. § 3.307(a)(3). However, 38 U.S.C.A. § 1113(a) (West 1991) provides that a presumption of service connection under section 1112 may be rebutted under the following circumstances:

(a) Where there is affirmative evidence to the contrary, or evidence to establish that an intercurrent injury or disease which is a recognized cause of any of the diseases within the purview of section 1112 or 1116 of this title, has been suffered between the date of separation from service and the onset of any such diseases, or the disability is due to the veteran's own willful misconduct, service connection pursuant to section

1112 or 1116 of this title will not be in order.

Furthermore, the applicable regulation, 38 C.F.R. § 3.307(d) (1992), provides:

(d) *Rebuttal of service incurrence.* Evidence which may be considered in rebuttal of service incurrence of a disease listed in [38 C.F.R.] § 3.309 will be any evidence of a nature usually accepted as competent to indicate the time of existence or inception of a disease, and medical judgment will be exercised in making determinations relative to the effect of intercurrent injury or disease. The expression "affirmative evidence to the contrary" will not be taken to require a conclusive showing, but such showing as would, in sound medical reasoning and in the consideration of all evidence of record, support a conclusion that the disease was not incurred in service.

These provisions establish two separate, although similar, standards, in addition to "willful misconduct", under which a presumption of service connection under section 1112 will be found to be inapplicable: (1) when there is evidence "to establish that an intercurrent injury or disease which is a recognized cause of [the chronic disease for which service connection is sought] has been suffered between the date of separation from service and the onset of any such disease[ ]"; or (2) when there is other "affirmative evidence to the contrary [of the presumption of service connection]", within the meaning of section 1113(a) and § 3.307(d) that "would ... support a conclusion that the disease was not incurred in service".

■ Applying the foregoing analysis to the instant case, the preliminary inquiry is whether the Board was correct, as a matter of law, in concluding that the evidence of the veteran's exposure to a person with PTB in 1946 or 1947 is sufficient (without further clarification in the record) to rebut any presumption of service incurrence of PTB that may be raised by the statutory and regulatory provisions as applied to the facts of this case. *See Goodsell,* BVA 91–____, at 4. The Board concluded that such evidence of exposure to PTB "strongly indicates that the veteran may have developed [PTB] as a result of that exposure", and that "such evidence would clearly rebut any presumption of inservice incurrence." *Ibid.* It is clear that evidence of **exposure** to a person with PTB is not evidence that the claimant has suffered "an intercurrent injury or disease which is a recognized cause of [PTB]" within the meaning of section 1113(a) simply because "exposure" is not itself "an intercurrent injury or disease". Therefore, the Board's determination that the presumption of service connection would be rebutted in this case must be based upon a conclusion that the evidence of the veteran's reported exposure in 1946 or 1947 to a person with PTB constitutes "affirmative evidence to the contrary" within the meaning of section 1113(a) and § 3.307(d). For the reasons stated below, the Court holds that the Board failed to provide an adequate statement of reasons or bases to support any such conclusion.

Section 1113(a) does not define the term "affirmative evidence to the contrary". However, pursuant to his statutory authority under 38 U.S.C.A. § 501(a)(1) (West 1991) to prescribe regulations "with respect to the nature and extent of proof and evidence and the method of taking and furnishing them in order to establish the right to [VA] benefits" that are "consistent with [the] laws" "administered by the [VA]", the Secretary has established regulatory guidelines in § 3.307(d) for determining what may constitute "affirmative evidence to the contrary". That regulatory provision establishes that "affirmative evidence to the contrary" must be "evidence of a nature usually accepted as competent to indicate the time of existence or inception of a disease" that "would, in sound medical reasoning and in the consideration of all evidence of record, support a conclusion that the disease was not incurred in service." 38 C.F.R. § 3.307(d) (1992).

In the present case, however, the Board did not specify which of the two rebuttal standards it was applying, or discuss the applicable statutory/regulatory provisions or point to any evidence or authority for

the proposition that the veteran's exposure (about which there are no details or further evidence in the record) to a person with PTB (about whom and which there are no details or further evidence in the record) constitutes "affirmative evidence to the contrary" so as to rebut any applicable presumption of service connection. The Board provided no basis for concluding that the single anecdotal reference to the veteran's exposure to a person with PTB in 1946 or 1947, without any details in the record as to the nature of that person's disease or of the veteran's reported exposure, would constitute "evidence of a nature usually accepted as competent" to indicate that the veteran incurred PTB as the result of that exposure, or that such a cursory reference to PTB exposure as the veteran made here "would ... support a conclusion that the disease was not incurred in service". On remand, therefore, any determination by the Board as to whether the veteran's reported PTB exposure constitutes affirmative evidence to rebut any applicable presumption of service connection must be made by explicit application of the governing statutory and regulatory provisions in section 1113(a) and § 3.307(d).

 Furthermore, because the record contains no details whatsoever as to the nature or extent of the veteran's reported PTB exposure, the nature of the PTB to which he was exposed, or the effects of that exposure, any conclusion by the Board that such reported exposure constitutes evidence that would support a conclusion that the veteran's PTB was incurred due to such exposure is a medical conclusion. The Board may not rely upon its own medical knowledge or opinion as the basis for such a conclusion; rather, the Board must point to independent medical evidence in the record or provide adequate supporting quotations from recognized medical treatises. *See Hatlestad II, supra; Colvin, supra.* It may be the case that the communicable nature of PTB is a matter of common knowledge in the medical community; however, neither the claimant nor this Court may be asked to accept the BVA's unsupported conclusion to that effect. The same is true regarding the likely effect of the type of PTB exposure to which this veteran reported being exposed in this case.

For the foregoing reasons, the Court holds that the Board has not provided an adequate statement of reasons or bases for its conclusion that any applicable presumption of service connection has been rebutted and that that conclusion is, therefore, set aside as having been made "without observance of procedure required by law". 38 U.S.C.A. § 7261(a)(3)(D) (West 1991); *Gilbert,* 1 Vet.App. at 56–57.

### D. Direct Service Connection

 Moreover, even if the Board were to conclude properly that any presumption of service connection was rebutted on the basis of the evidence of record adequately developed, that would not compel denial of a claim of service connection for a chronic disease. Rather, in such a situation the "affirmative evidence to the contrary" would do no more than preclude the claimant from relying on the section 1112 presumption provisions to establish service connection for a chronic disease first manifest during the presumption period. A claimant may still establish "direct" service connection on the basis of evidence that the disease was actually incurred or aggravated in active service. *See Cosman, supra; Triplette, supra; Godfrey, supra; Douglas, supra.* This is made manifestly clear in subsection (b) of section 1113, which provides:

> (b) Nothing in section 1112 or 1116 of this title or subsection (a) of this section shall be construed to prevent the granting of service-connection for any disease or disorder otherwise shown by sound judgment to have been incurred in or aggravated by active military, naval, or air service.

38 U.S.C.A. § 1113(b) (West 1991); *see also* 38 C.F.R. § 3.303(d) (1992) ("[p]resumpt[ion] periods are not intended to limit service connection to diseases so diagnosed [that is, during the presumption period] when the evidence warrants direct service connection"). Therefore, where the Board properly concludes that a section 1112 pre-

sumption of service connection has been rebutted under section 1113, the Board will nevertheless be required to adjudicate the claim without regard to that presumption in order to determine whether the evidence otherwise establishes that the disease was incurred or aggravated in active service.

### E. Benefit of the Doubt

■ The Board erred also in failing to address the following benefit-of-the-doubt rule in 38 U.S.C.A. § 5107(b) (West 1991):

> When, after consideration of all evidence and material of record ... there is an approximate balance of positive and negative evidence regarding the merits of an issue material to the determination of the matter, the benefit of the doubt in resolving each such issue shall be given to the claimant.

"In a case where there is significant evidence in support of an appellant's claim, as there is here, the Board must provide a satisfactory explanation as to why the evidence was not in equipoise." *Williams v. Brown*, 4 Vet.App. 270, 273, (1993); *see Gilbert v. Derwinski*, 1 Vet.App. 49, 54 (1990).

Two physicians' opinions that active PTB possibly or "somewhat probabl[y]" was present in service and that it was most likely present between 1945 and 1950, a period largely concurrent with the statutory presumption period, are "significant evidence" supporting the veteran's claim. Indeed, the Board stated in its decision that it was "likely" that the onset of PTB was earlier than the initial diagnosis in September 1950, but concluded that the onset "was not shown to be at such a time" as to justify a finding of direct or presumptive service connection. However, the Board failed to explain why, in light of the physicians' opinions as to the onset of PTB, the evidence was not at least in equipoise as to whether that onset had occurred during service or within the presumption period. In this connection, the Board's conclusion that the PTB onset was "not shown" to have been during service or the presumption period (*Goodsell*, BVA 91–___, at 4) appears to place on the appellant the burden of establishing by a preponderance of evidence that PTB did have its onset during such time. However, such a burden is inconsistent with the statutory benefit-of-the-doubt rule, which requires only that the evidence be "in relative equipoise" in order for the claimant to prevail; that is, "the preponderance of the evidence must be against the claim for benefits to be denied". *Gilbert, supra.* In light of the "significant evidence in support of" the claim, the Board on remand will be required to discuss the applicability of the benefit-of-the-doubt rule as it pertains to both the issue of the date of onset of PTB and the issue of whether the presumption of PTB, if applicable, is adequately rebutted. *See Williams, supra.*

### III. Conclusion

Based upon the foregoing opinion, the Court vacates the February 21, 1991, BVA decision and remands the matter to the Board for prompt readjudication, consistent with this opinion, on the basis of all evidence of record and all applicable provisions of law and regulation. *See* 38 U.S.C.A. §§ 7104(a), (d)(1), 5107(b) (West 1991); *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991). On remand, the Board, therefore, must consider the applicability of the presumption of service connection in light of the evidence of record after that evidence is fully developed. If on remand the Board concludes that the presumption of service connection has been rebutted under section 1113(a), it must provide an adequate statement of the reasons or bases for such a conclusion, including discussion of the applicable statutory and regulatory provisions and citation to medical evidence of record or adequate quotation of recognized medical treatises to support any medical conclusions. *See Hatlestad II, supra; Colvin, supra.* Furthermore, if the Board concludes that the presumption of service connection is rebutted, it must still adjudicate the veteran's claim for direct service connection in light of the medical evidence tending to show that his PTB was present at separation from service. "On remand, the appellant will be free to submit additional evidence and argument". *See Quarles v. Derwinski*, 3 Vet.App. 129, 141 (1992). A final decision by the Board fol-

lowing the remand herein ordered will constitute a new decision which, if adverse, may be appealed to this Court only upon the filing of a new Notice of Appeal with the Court not later than 120 days after the date on which notice of that new decision is mailed to the appellant.

VACATED AND REMANDED.