Citation Nr: 1730414 
Decision Date: 07/31/17 Archive Date: 08/04/17

DOCKET NO. 13-05 680 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Petersburg, Florida


THE ISSUE

Entitlement to service connection for erectile dysfunction secondary to diabetes mellitus, type II (diabetes mellitus)


REPRESENTATION

Appellant represented by: The American Legion


ATTORNEY FOR THE BOARD

K. Churchwell, Associate Counsel



INTRODUCTION

The Veteran served on active duty from October 1965 to October 1967. His service medals include the Combat Infantry Badge (CIB).

This matter initially came before the Board of Veterans' Appeals (Board) on appeal from an August 2010 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in St. Petersburg, Florida.

In March 2015, the Board issued a decision that granted service connection for bilateral hearing loss and tinnitus but denied service connection for erectile dysfunction and a lumbar spine disability. The Veteran appealed that decision to the United States Court of Appeals for Veterans Claims (Court). In a May 2015 Memorandum Decision, the Court vacated that portion of the Board's March 2015 decision that denied entitlement to service connection for erectile dysfunction and dismissed the issue of entitlement to service connection for a lumbar spine disability. Pursuant to the May 2015 Memorandum Decision, the Board remanded the claim in February 2017 for further development. The claim has now been returned to the Board for further appellate adjudication.


FINDING OF FACT

The preponderance of the evidence is against a finding that the Veteran's current erectile dysfunction is related to his service, or was caused or aggravated by his service-connected diabetes mellitus.



CONCLUSION OF LAW

The criteria for entitlement to service connection for erectile dysfunction, to include as secondary to service-connected diabetes mellitus have not been met. U.S.C.A. §§ 1101, 1110, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.310 (2016).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

Duties to Notify and Assist

VA has a duty to notify and assist claimants in substantiating claims for VA benefits. 38 U.S.C.A. §§ 5103, 5103A (West 2014); 38 C.F.R. § 3.159 (2016). 

The duty to notify has been met. See October 2009 VCAA correspondence. Neither the Veteran, nor his representative, has alleged prejudice with regard to notice. The Federal Court of Appeals has held that "absent extraordinary circumstances...it is appropriate for the Board and the Veterans Court to address only those procedural arguments specifically raised by the veteran...." See Scott v. McDonald, 789 F.3d 1375 (Fed. Cir. 2015). In light of the foregoing, nothing more is required.

VA also has a duty to assist a claimant in the development of a claim. That duty includes assisting the claimant in the procurement of service and other relevant records and providing an examination when necessary. 38 U.S.C.A. § 5103A (West 2014); 38 C.F.R. § 3.159 (2016). 

The Board finds that all necessary development has been accomplished, and therefore appellate review may proceed without prejudice to the Veteran. See Bernard v. Brown, 4 Vet. App. 384 (1993). The RO has associated the Veteran's service treatment records and VA treatment records with the claims file. The Veteran was also afforded adequate examinations. The examiners considered the relevant history, provided a detailed description of the condition, and provided an extensive analysis to support the conclusions reached. See Stefl v. Nicholson, 21 Vet. App. 120, 123-24 (2007). 

In finding the VA examinations adequate in this case, the Board acknowledges that the Veteran's representative has challenged the adequacy of the most recent examination conducted in March 2017. See July 2017 informal hearing brief. This examination was conducted in compliance with the Board's February 2017 remand, which directed the RO to return the Veteran's claims file to the examiner who prepared the March 2010 VA examination, or if that examiner was unavailable, to another "suitably qualified VA examiner." As the March 2010 VA examiner was no longer available, the Veteran was scheduled for an in-person examination with a new examiner. In the July 2017 informal hearing brief, the Veteran's representative accepted that the case could not be returned to the March 2010 VA examiner for a supplemental opinion (due to unavailability) but challenged the qualifications of the March 2017 VA examiner by stating that it could not be determined if the examiner had a proper medical license or if she was even certified in the field of urology. The representative argued that the March 2017 VA examination "should be considered as inadequate for rating purposes due to lack of an Urologist conducting the examination and rendered the Board ordered medical opinion."

The Board notes that VA satisfies its duty to assist when it provides a medical examination performed by a person who is qualified through education, training, or experience to offer medical diagnosis, statements, or opinions, whether that is a doctor, nurse practitioner, or physician's assistant. See Cox v. Nicholson, 20 Vet. App. 563, 569 (2007) (physician's assistant was competent to perform examination); Goss v. Brown, 9 Vet. App. 109 (1996) (recognizing that nurses' statements regarding nexus were sufficient to make a claim well grounded); Williams v. Brown, 4 Vet. App. 270, 273 (1993) (finding opinions of a VA registered nurse therapist competent medical testimony and requiring the Board to provide reasons or bases for finding those opinions unpersuasive). Further, the Board may assume a VA medical examiner is competent as part of the presumption of regularity that attaches to the actions of public officials. Cox, supra; Rizzo v. Shinseki, 580 F.3d 1288, 1291 (Fed. Cir. 2009) (VA has no obligation to present affirmative evidence of a VA physician's qualifications during Board proceedings, absent a challenge by the Veteran); Hilkert v. West, 12 Vet. App. 145, 151 (1999) (an appellant bears the burden of persuasion to show that the Board's reliance on an examiner's opinion was in error).

Here, the record shows that the March 2017 VA examiner is a doctor of medicine. There is nothing in the opinion to suggest that, as a physician, she was not qualified through lack of education, training, or experience to render an opinion regarding the Veteran's erectile dysfunction. See Sickels v. Shinseki, 643 F.3d 1362, 1366 (Fed. Cir. 2011) (holding that, in the absence of clear evidence to the contrary, VA medical examiners are presumed competent). Notably, the March 2010 VA examination was not performed by an urologist either and the adequacy of that examiner was not challenged. The Veteran's representative has also not provided any basis for his assertion that the examiner should have been conducted by a urologist. As noted above, an examiner need only be "qualified through education, training, or experience to offer medical diagnoses, statements, or opinions," and a specific specialist is not necessarily required. See Cox, 20 Vet. App. at 569. Regarding the question of whether the March 2017 VA examiner is properly licensed, as she is employed by VA, the presumption of regularity applies and the Board likewise finds that this an insufficient basis to hold that the March 2017 VA examination is inadequate. The March 2017 VA examination included an interview with the Veteran, a review of the record, and a full examination. The opinion provided by the March 2017 VA examiner also addresses in full the possible relationship between the Veteran's erectile dysfunction and his diabetes mellitus. As this opinion offered clear conclusions with supporting rationale, the Board finds the March 2017 VA examination to be adequate in order to evaluate the nature and etiology of the Veteran's erectile dysfunction. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008); Stefl v. Nicholson, 21 Vet. App. 120, 124 (2007) ("[A]medical opinion...must support its conclusion with an analysis that the Board can consider and weigh against contrary opinions"); see also Cox, 20 Vet. App. at 569 ("[T]he Board is entitled to assume the competence of a VA examiner."). 

In so finding, the Board also finds there has been substantial compliance with the February 2017 remand. See Dyment v. West, 13 Vet. App. 141, 146-147 (1999) (remand not required under Stegall v. West, 11 Vet. App. 268 (1998) where Board's remand instructions were substantially complied with).

As there is no indication that any failure on the part of VA to provide additional notice or assistance reasonably affects the outcome of this claim, the Board finds that any such failure is harmless. See Mayfield v. Nicholson, 19 Vet. App. 103 (2005), rev'd on other grounds, Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006).

Legal Criteria, Factual Background, and Analysis

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C.A. § 1110; 38 C.F.R. § 3.303(a). To establish a right to compensation for a present disability, a Veteran must show: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service - the so-called "nexus" requirement. Holton v. Shinseki, 557 F.3d 1362, 1366 (Fed. Cir. 2009) (quoting Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004)). Service connection may be granted for any disease initially diagnosed after discharge when all of the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). 

Secondary service connection is warranted where a disability is proximately due to or the result of a service-connected disease or injury. 38 C.F.R. § 3.310(a). Briefly, the threshold legal requirements for a successful secondary service connection claim are: (1) Evidence of a current disability for which secondary service connection is sought; (2) a disability for which service connection has been established; and (3) competent evidence of a nexus between the two.

When there is an approximate balance of positive and negative evidence regarding the merits of an issue material to the determination of the matter, the benefit of the doubt in resolving each such issue shall be given to the claimant. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102. When all of the evidence is assembled, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the appellant prevailing in either event, or whether a fair preponderance of the evidence is against the claim, in which case the claim is denied. Gilbert v. Derwinski, 1 Vet. App. 49, 55 (1990).

According to the March 2010 and March 2017 VA examiners, the Veteran has a diagnosis of erectile dysfunction. These diagnoses satisfy the first prong of the service connection claim, i.e. the existence of a current disability.

Regarding the second prong of the service connection claim, the in-service injury, the Veteran's service treatment records, including his September 1967 Report of Medical Examination for purposes of separation and Report of Medical History for purposes of separation are silent for any complaints, findings, treatment or diagnoses related to erectile dysfunction.

A review of the claims file fails to show that the Veteran had erectile dysfunction in service or within one year of service discharge. There is also no competent evidence establishing a diagnosis of erectile dysfunction until many years following service. The Veteran does not necessarily argue the contrary. As such, service connection for erectile dysfunction on the theory of direct onset is not established. 38 C.F.R. § 3.303(a).

Instead, the crux of the Veteran's argument for service connection is essentially that his current erectile dysfunction is caused or aggravated by his service-connected diabetes mellitus. However, the competent medical evidence of record does not support that argument. 

A VA examination was performed in March 2010. As previously stated, the examiner diagnosed the Veteran with erectile dysfunction and found that the Veteran had multiple risk factors in addition to diabetes mellitus. The additional risk factors included history of cerebrovascular accident, hypertension, dyslipidemia, and spinal stenosis and markedly low testosterone. In the examiner's opinion, the Veteran's erectile dysfunction was less likely than not caused by or related to or worsened beyond the natural progression by his history of diabetes mellitus. However, as articulated by the May 2016 Court decision, this opinion was found to be inadequate as the rationale did not sufficiently explain why the Veteran's diabetes mellitus was not a contributing or aggravating factor.

Another VA examination was performed in March 2017 in order to obtain an adequate opinion regarding secondary service connection. The examiner opined it was less likely than not that the service-connected diabetes mellitus contributed to or aggravated the erectile dysfunction beyond its natural progression. In support of the opinion, the examiner indicated the Veteran has known multiple erectile dysfunction risks which include hypertension, hyperlipidemia, obesity, diabetes, natural aging, and testosterone deficiency. Furthermore, the examiner reported the Veteran's erectile dysfunction preceded the Veteran's diabetes mellitus diagnosis by two years. Additionally, the examiner stated that after 50 years of age, individuals have erectile dysfunction due to natural age-related degeneration of the male organs. Because there are multiple factors increasing the risk of erectile dysfunction in individuals it is not possible to determine the precise percentage each risk factor plays in the overall condition of erectile dysfunction without resorting to mere speculation. However, the examiner stated that extrapolating the risk factors and the preexisting erectile dysfunction history supports the conclusion that the Veteran's condition is less likely than not caused by, related to, or aggravated beyond its natural progression by service-connected diabetes mellitus.

Consideration has also been given to the arguments made by the Veteran. However, while lay persons are competent to provide opinions on some medical issues, see Kahana v. Shinseki, 24 Vet. App. 428, 435 (2011), as to the specific issues in this case, an opinion as to the etiology and onset of erectile dysfunction, falls outside the realm of common knowledge of a lay person. See Jandreau v. Nicholson, 492 F.3d 1372, 1377 n.4 (Fed. Cir. 2007) (lay persons not competent to diagnose cancer). Erectile dysfunction is not the type of condition that is readily amenable to mere lay diagnosis or probative comment regarding its etiology, as the evidence shows that diagnostic testing and other specific findings are needed to properly assess and diagnose the disorder. See Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009); Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007); Woehlaert v. Nicholson, 21 Vet. App. 456, 462 (2007).

That is, although the Board readily acknowledges that the Veteran is competent to report symptoms of erectile dysfunction, there is no indication that he is competent to etiologically link his erectile dysfunction to his service or his service-connected diabetes mellitus. The Veteran has not been shown to possess the requisite medical training, expertise, or credentials needed to render a diagnosis or a competent opinion as to medical causation. Nothing in the record demonstrates that he has received any special training or acquired any medical expertise in evaluating such disorders. See King v. Shinseki, 700 F.3d 1339, 1345 (Fed.Cir.2012). Accordingly, this lay evidence does not constitute competent evidence and lacks probative value.

Alternatively, the March 2017 VA examiner reviewed the claims file, took a history from the Veteran, including his contentions regarding the etiology of the condition and personally examined the Veteran. Based on her medical training and experience, the examiner found that the Veteran's erectile dysfunction was less likely than not caused or aggravated by his service-connected diabetes mellitus and provided sound rationale based on medical research. Thus, the Veteran's statements, to the extent that they are to be accorded some probative value, are far outweighed by the more thoroughly explained and detailed opinion from the VA medical professional. Notably, there are no medical opinions contrary to the March 2017 VA examiner's opinion in the record.

For these reasons, the Board finds that the preponderance of the evidence is against the claim for service connection for erectile dysfunction, to include as secondary to service-connected diabetes mellitus, and there is no reasonable doubt to be resolved. 38 U.S.C.A. § 5107(b).

ORDER

Service connection for erectile dysfunction secondary to diabetes mellitus, type II is denied.




____________________________________________
A. ISHIZAWAR
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs