http://www.va.gov/vetapp16/Files6/1644968.txt

Citation Nr: 1644968 
Decision Date: 11/30/16 Archive Date: 12/09/16

DOCKET NO. 08-36 330 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Milwaukee, Wisconsin

THE ISSUES

1. Entitlement to service connection for a low back disability.

2. Entitlement to service connection for a bilateral knee disability, to include as secondary to a service-connected bilateral foot disability.

3. Entitlement to a rating in excess of 10 percent for bilateral anterior metatarsalgia.

4. Entitlement to a total disability rating based upon individual unemployability as a result of service-connected disability (TDIU).

REPRESENTATION

Appellant represented by: Larry D. Schuh, Attorney

WITNESSES AT HEARINGS ON APPEAL

Appellant and Spouse

ATTORNEY FOR THE BOARD

T. L. Douglas, Counsel

INTRODUCTION

The appellant is a Veteran who served on active duty from April 1965 to December 1968 and from February 1971 to May 1977. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from rating decisions in November 2007 and July 2012 by the Milwaukee, Wisconsin, Regional Office (RO) of the Department of Veterans Affairs (VA). In April 2015, the Veteran testified at a personal hearing before the undersigned Veterans Law Judge. A copy of the transcript of that hearing is of record. The case was remanded for additional development in April 2010, September 2014, and April 2016.

FINDINGS OF FACT

1. A chronic low back disability was not present during active service and arthritis was not manifest to a degree of 10 percent or more within one year of service; and, the preponderance of the evidence fails to establish that a present low back disability is etiologically related to service or a service-connected disability.

2. A bilateral knee disability was not present during active service and arthritis was not manifest to a degree of 10 percent or more within one year of service; and, the preponderance of the evidence fails to establish that a present knee disability is etiologically related to service or a service-connected disability.

3. The evidence demonstrates that the Veteran's bilateral anterior metatarsalgia disability is manifested by arthritis and painful motion in the right foot.

4. The evidence demonstrates that the Veteran's bilateral anterior metatarsalgia disability is manifested by arthritis and painful motion in the left foot.

5. The evidence demonstrates the Veteran's service-connected disabilities do not render him unable to secure and follow a substantially gainful occupation.

CONCLUSIONS OF LAW

1. The criteria for service connection for a low back disability have not been met. 38 U.S.C.A. §§ 1110, 1112, 1113, 1131 (West 2014); 38 C.F.R. §§ 3.303, 3.307, 3.309, 3.310 (2015).

2. The criteria for service connection for a bilateral knee disability have not been met. 38 U.S.C.A. §§ 1110, 1112, 1113, 1131 (West 2014); 38 C.F.R. §§ 3.303, 3.307, 3.309, 3.310 (2015).

3. The criteria for an alternative, separate, 10 percent rating for arthritis to the right foot as a result of bilateral anterior metatarsalgia have been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014), 38 C.F.R. §§ 4.1, 4.3, 4.40, 4.45, 4.59, 4.71a, Diagnostic Codes 5010, 5279 (2015).

4. The criteria for an alternative, separate, 10 percent rating for arthritis to the left foot as a result of bilateral anterior metatarsalgia have been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014), 38 C.F.R. §§ 4.1, 4.3, 4.40, 4.45, 4.59, 4.71a, Diagnostic Codes 5010, 5279 (2015).

5. The criteria for entitlement to a TDIU are not met. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. §§ 3.340, 4.16(b) (2015).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2015). 

The duty to notify has been met. See VA correspondence dated in June 2007, June 2008. July 2008, September 2011, and March 2013 and the April 2016 Travel Board Hearing transcript. Neither the Veteran, nor his representative, has alleged prejudice with regard to notice. The Federal Court of Appeals has held that "absent extraordinary circumstances...it is appropriate for the Board and the Veterans Court to address only those procedural arguments specifically raised by the veteran...." See Scott v. McDonald, 789 F.3d 1375 (Fed. Cir. 2015). In light of the foregoing, nothing more is required.

As for the duty to assist, all identified and authorized records relevant to the matters have been requested or obtained. The available record includes service treatment records, VA treatment and examination reports, non-VA (private) treatment records, Social Security Administration (SSA) records, and statements and testimony in support of the claims. The development requested on remand has been substantially completed. There is no evidence of any additional existing pertinent records. 

When VA undertakes to provide a VA examination or obtain a VA opinion it must ensure that the examination or opinion is adequate. VA medical opinions obtained in this case are adequate as they are predicated on a substantial review of the record and medical findings and consider the Veteran's complaints and symptoms. Accordingly, the Board finds that VA's duty to assist with respect to obtaining a VA examination or opinion has been met. 38 C.F.R. § 3.159(c)(4). VA medical opinions have been provided based upon examination and review of the other evidence of record. There is no merit to the Veteran's June 2016 contention that the VA examination was inadequate due to the limited opportunities for examiners to analyze his gait. The available medical evidence is sufficient for adequate determinations. There has been substantial compliance with all pertinent VA law and regulations and to adjudicate the claims would not cause any prejudice to the appellant.

Service Connection Claims

Under the relevant laws and regulations, service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C.A. §§ 1110, 1131 (West 2014). Service connection may be established on a secondary basis for a disability which is proximately due to or the result of service-connected disease or injury. 38 C.F.R. § 3.310(a). When aggravation of a nonservice-connected condition is proximately due to or a result of a service-connected disability a veteran may be compensated for the degree of disability over and above the degree of disability existing prior to the aggravation. Allen v. Brown, 7 Vet. App. 439, 448 (1995). 

Generally, the evidence must show: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163, 1166-67 (Fed. Cir. 2004). In order to prevail on the issue of entitlement to secondary service connection, there must be (1) evidence of a current disability; (2) evidence of a service-connected disability; and (3) nexus evidence establishing a connection between the service-connected disability and the current disability. See Wallin v. West, 11 Vet. App. 509, 512 (1998).

Certain chronic diseases, including arthritis, are subject to presumptive service connection if manifest to a compensable degree within one year from separation from service even though there is no evidence of such disease during the period of service. This presumption is rebuttable by affirmative evidence to the contrary. 38 U.S.C.A. §§ 1112, 1113 (West 2014); 38 C.F.R. §§ 3.307(a)(3), 3.309(a) (2015). 

Under 38 C.F.R. § 3.303(b), an alternative method of establishing the second and third Shedden/Caluza element is through a demonstration of continuity of symptomatology if the disability claimed qualifies as a chronic disease listed in 38 C.F.R. § 3.309(a). Arthritis is a qualifying chronic disease. See Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). As a result, service connection via the demonstration of continuity of symptomatology is applicable as to these matters in the present case.

Even though a disease is not included on the list of presumptive diseases, a nexus between the disease and service may nevertheless be established on the basis of direct service connection. Stefl v. Nicholson, 21 Vet. App. 120 (2007). When a claimed disability is not included as a presumptive disability, direct service connection may nevertheless be established by evidence demonstrating that the disability was in fact incurred during service. Combee v. Brown, 34 F.3d 1039 (Fed. Cir. 1994).

The Veteran contends that he has present low back and knee disabilities as a result of active service. In statements in support of his claims he reported that he had been treated for muscle spasms in the back in approximately November 1972 and that he had also been treated for tendonitis and excessive swelling in the left knee and foot. He asserted that he had experienced continuous and chronic back pain since service. He further argues that his back and knee disorders were either incurred or aggravated by his service-connected foot disabilities. He testified that numbness in the feet and knees had caused him to fall while playing volleyball. 

Service treatment records show the Veteran complained of right knee pain and reported having sustained a knee injury approximately one year earlier in a fall down stairs. He was treated for right knee pain in October 1965 and for a right lateral collateral ligament strain in November 1967. A January 1972 X-ray study revealed his back was normal. A November 1972 report noted treatment for low back strain. Records also show he complained of right and left knee and low back pain in May 1976. No knee or back were noted upon his physical evaluation board at discharge.

VA examination in November 1977 noted the Veteran ambulated with a normal gait. There was full range of motion of the ankles, but the left calf measured 1/2 inch smaller than the right. 
 
Private treatment records dated in February 1982 included diagnoses of partial tear of the left Achilles tendon and rupture of the left calf muscle. It was noted the Veteran had sustained the injury while playing volleyball. Records show he was treated for a lumbar strain in February 1985, for an acute left-sided lumbosacral strain in July 1986, for a sprain to the left hindfoot of the arch while playing volleyball in November 1986, and for popping and catching for the prior month in the right knee with a diagnosis of patellofemoral arthritis in November 1987. The July 1986 report noted he had experienced sudden left lower back pain the previous day while helping a friend lift an air conditioner that weighed approximately 100 pounds. He reported pain radiating to the left knee. It was noted he had been doing well prior to the injury with no specific back problems and that he had been able to lift 60 pound bundles of paper at work without any trouble. Records dated in December 1988 show he sustained a right ankle injury the previous evening playing volleyball. 

On VA examination in November 1989 the Veteran reported having been treated for low back pain in December 1973 that required a muscle relaxant with recovery after one week. He stated he had sporadic low back pain in 1975 and 1976 that was treated with medication without residuals. He reported that his low back pain had recurred intermittently for the past four to five years, but he recalled no injury to the back. The examiner noted the Veteran had a history of four post-service sports injuries related to volleyball activities, including injuries to the ligament or tendon of the left lower leg and a pulled muscle to the left posterior leg with bruise and swelling from the knee down that required casting approximately six years earlier. Three years earlier he had over-stretched the left foot and required medication. A year and a half earlier he had torn the left calf muscle and had required casting for two weeks. One year earlier he had twisted the left ankle with casting for one week. It was noted he had a weaker left lower leg and had to run slowly with a limp on the left leg while jogging or walking for more than four miles. 

Examination revealed adequate arches to the left foot with a two inch operative scar to the base of the third toes. There was slight tenderness and slight paresthesia to pinprick stimulation at the third toe. Range of motion was full. There was minimal tenderness to the left medial arch. Toe and heel walking were normal, bilaterally. The right foot was totally unremarkable without tenderness. The left ankle was unremarkable without tenderness, crepitus, or effusion. Musculature of the left leg was well developed and symmetrical to the right. The left knee was unremarkable. X-ray studies revealed degenerative change at the left hindfoot, incidental talonavicular joint and calcaneus spurs, and minor degenerative changes to the lumbar spine. The diagnoses included history of metatarsalgia status post excision of Morton's neuroma to the left foot with residuals, asymptomatic right foot, history of recurrent low back pain, and history of left ankle and lower leg muscle injuries due to post-service sports injuries unrelated to the left foot disability. 

Private treatment records dated in March 1990 noted the Veteran complained of increasing low back pain the previous evening. It was noted he had not had any serious prior problems and that he did not remember any specific injury. The diagnosis was acute lumbar strain. Records dated in July 1992 show he complained of increasing left knee pain over the previous two weeks and that he subsequently underwent arthroscopy of the left knee for a medial meniscal tear. A July 1998 report included diagnoses of rule out significant medial meniscal tear of the left knee, degenerative joint disease of the left knee, and plantar fascial strain of the left heel. A September 1998 report noted he developed right-sided low back pain after doing yard work. Records dated in February 2003 show he had acute low back pain with recent strain status post fall while shoveling snow. An April 2003 magnetic resonance imaging (MRI) scan revealed L5-S1 circumferential disk bulging with focal central disk protrusion. He underwent L5-S1 decompression, stabilization, and fusion in March 2006. 

In an April 2007 private medical statement G.A.S., M.D., noted the Veteran had chronic low back pain that was felt to be related to degenerative disk disease. It was further noted, in essence, that he had reported problems dating back to 1976 when he had surgery for Morton's neuroma to the left foot and left knee tendonitis. The physician stated he believed these were possible contributing factors to his developing low back pain. An associated treatment report noted Morton's neuroma to the left foot and left knee tendonitis could disrupt the kinetic chain sufficiently to aggravate alignment of the spine precipitating acceleration of his degenerative disk disease, but that other factors involved included obesity, activity level, and heredity. 

On VA examination in September 2007 the Veteran's gait was normal with no antalgia or functional limitations noticed on standing or walking. There was no evidence of edema, instability, or weakness in movement of the intrinsic foot muscles and no objective evidence of any painful motion. There were symmetrical callosities on the lateral aspect of the mid-foot, bilaterally, but no unusual shoe wear pattern to support any abnormal weight-bearing. He assumed normal posture on standing and was able to supinate and pronate his feet. He could stand and walk on heels and toes with some difficulty. The diagnoses included degenerative joint disease to the bilateral knees. The examiner stated that the Veteran's degenerative joint disease of the knees was most likely the meniscus tear he sustained in 1992 without an obvious etiology, but that his current knee disorders could not in any way be connected to his foot disabilities. The current severity of his knee disorders did not match his foot condition and there was no possible connection between them. In the absence of any significant antalgia and the lack of abnormal biomechanics resulting from the feet it was the examiner's opinion that the service-connected bilateral foot condition did not cause and did not aggravate the bilateral knee condition. 

In a February 2011 private medical statement Dr. G.A.S. noted the Veteran had low back and bilateral knee disabilities that as likely as arose from his active duty service. He indicated that the Veteran's in-service complaints of pain could as likely as not have later developed into an arthritic condition. Reference was made to the absence of any other known etiology, and that the continuous walking with an abnormal gait, which had been observed, could cause secondary orthopedic difficulties. The physician clarified in a May 2011 statement that he had been aware that the Veteran had various intervening incidents since active service that were considered in determining that the etiology of his current condition was the chronic nature of his service disability and not primarily related to those intervening incidents.

VA examination in November 2010 included diagnoses of right and left knee osteoarthritis. The examiner opined that the disorder was not related to the Veteran's service. The rationale was that he had generalized arthritis and that his was a natural part of the disorder. The examiner stated that it would be mere speculation to state that the Veteran's foot disability had aggravated his knee disorders. No further explanation was provided. 

VA knee examination in May 2016 included a diagnoses of bilateral knee joint osteoarthritis and a right total knee replacement. The examiner noted that the Veteran was treated for right knee pain in October 1965 and a right collateral ligament strain in 1967, but that lateral collateral ligament strains typically resolved without permanent disability and that a 1971 re-enlistment examination was negative for any knee problems. It was further noted that there were complaints of bilateral knee pain in May 1976, but that there was no evidence of a chronic knee condition after that evaluation. The examiner summarized the post-service evidence of record and found that it was less likely the Veteran's right total knee replacement due to knee degenerative joint disease and left knee degenerative joint disease were a result of his military service. 

The rationale for the opinions were based upon an extensive review of the medical records and the absence of any claim as to a knee disorder in May 1977 when the Veteran submitted his initial service connection claim for a foot disorder. It was noted that an October 1977 general medical examination was negative for any knee disorder and that there was no evidence of a chronic knee condition from 1977 to 1985. The examiner acknowledged that his treating physicians had provided opinions that his knee condition dated back to service, but that an extensive review of the medical records did not support the contention that his current knee problem began during service. 

The examiner also found that it was less likely that the Veteran's current knee were a result of or had been permanently aggravated by his service-connected bilateral foot condition. It was noted that he had asserted that his knee conditions may be related to his service-connected bilateral foot condition and that his private medical care providers had provided letters supporting this opinion, but that his medical records were extensively reviewed for evidence of a chronic gait abnormality due to his feet and that there was no evidence of a significant gait abnormality due to his foot condition from 1977 through 2007. After 2007, it was noted, his knee disabilities should be considered permanent since he had already undergone bilateral knee surgeries. 

A May 2016 VA back examination included diagnoses of degenerative arthritis of the spine and degenerative disc disease status post lumbar spine surgery. The examiner noted that the Veteran reported developing back pain in the service, that service treatment records documented a normal back on X-ray examination in 1972, and that he had an episode of back pain in May 1976. It was further noted that service treatment records were negative for any chronic ongoing back condition while the service and that there was no indication of a back disorder at the time of his initial VA claim in May 1977. VA examination in October 1977 was negative for a back condition and there was no evidence of a chronic back condition from 1977 until 1985. The examiner summarized the Veteran's reports and the medical evidence of record and found that his degenerative joint disease and degenerative disc disease of the lumbar spine status post surgery was less likely a result of his military service. 

The rationale for the opinion was based upon an extensive review of the Veteran's medical records including service treatment records which documented a history of back pain and acute lumbar strain. It was noted that there was no evidence of a chronic back condition while in service and that medical literature documented that ninety percent of acute back strains resolved within six weeks regardless of treatment. There was no evidence of a claim for a back disorder in May 1977 when the Veteran submitted his initial service connection claim for a foot disorder. An October 1977 general medical examination was negative for a back disorder and there was no evidence of a chronic back condition from 1977 to 1985. The examiner noted that there were multiple entries from his treating physicians, but that there was no evidence to support that his current back condition was the result of an injury in service or was due to his military service. There was no evidence degenerative joint disease or degenerative disc disease of the lumbar spine was manifest within a year of service and it was the examiner's opinion that the condition developed several years after he left service. 

The examiner also found that it was less likely the Veteran's degenerative joint disease and degenerative disc disease of the lumbar spine were a result of or was permanently aggravated by his service-connected bilateral foot condition. It was noted that he had testified that his back and knee condition may be related to his service-connected bilateral foot condition and that there were letters from his private medical care providers supporting this opinion, but that records in 1977, 1989, and 2007 revealed no evidence of a significant gait abnormality due to his foot condition. By 2006, his back condition should be considered permanent since he had undergone back surgery.

Based upon the evidence of record, the Board finds that chronic low back and bilateral knee disabilities were not present during active service and that arthritis of the lumbar spine and knees was not manifest to a degree of 10 percent or more within one year of service. The persuasive medical evidence further demonstrates that his present low back and bilateral knee disabilities were neither incurred nor caused by an in-service injury, event, or illness and was not permanently worsened as a result of a service-connected disability. The September 2007 and May 2016 VA opinions are persuasive and based upon adequate rationale. The examiners are shown to have reviewed the evidence of record and to have adequately considered the credible lay statements and reported symptom manifestation history of record. See Dalton v. Nicholson, 21 Vet. App. 23 (2007). 

The Board finds that the etiology opinions provided by Dr. G.A.S. that related the Veteran's back and knee problems to his service or service-connected foot disabilities warrant a lesser degree of probative weight. The provided opinions are found to have been either speculative in nature or lacking in rationale as to pertinent matters related to the opinions. Notably, in his February 2011 statement the physician stated that the pain the Veteran reported in service could have later developed into his current arthritic condition and similarly indicated that there was a possibility that his foot disabilities and resulting abnormal gait had caused his back and knee problems. Although his May 2011 statement noted he had been aware that the Veteran had various intervening incidents since active service, no specific information was provided identifying which incidents were considered. Such statements are found to be too speculative or too vague to warrant any significant probative weight. The Board also finds that Dr. G.A.S. did not address the absence of pertinent treatment as to these matters for many years after service, the Veteran's body habitus, nor the extensive post-service evidence of the Veteran's physical activity and sports-related lower extremity injuries (i.e. playing volleyball, lifting paper at work, etc.). In fact, in his April 2007 treatment report Dr. G.A.S. identified other factors pertinent in this case, including obesity and activity level, as precipitating acceleration of the Veteran's degenerative disk disease. There is no indication why these matters were excluded as causal precipitating factors.

The probative value of the opinions from Dr. G.A.S. are further reduced to their dependence of the history provided by the Veteran, which is inconsistent. See Coburn v. Nicholson, 19 Vet. App. 427, 432-433 (2006); Kowalski v. Nicholson, 19 Vet. App. 171, 179 (2006). Notably, on VA examination in November 1977, the Veteran ambulated with a normal gait and that private treatment records dated from 1982 include evidence of numerous relevant lower extremity and low back injuries. Reports in February 1982 indicate a partial tear of the left Achilles tendon and rupture of the left calf muscle were incurred while playing volleyball. He was treated for a lumbar strain in February 1985, for an acute left-sided lumbosacral strain in July 1986 after lifting an air conditioner, for a sprain to the left hindfoot of the arch while playing volleyball in November 1986, for popping and catching in the right knee in November 1987for a right ankle injury after playing volleyball in December 1988, and for acute low back pain with recent strain after a fall while shoveling snow in February 2003. Overall, the Board finds the Veteran's statements as to continued low back and knee symptomatology to be inconsistent with the evidence of record and the opinions of Dr. G.A.S. to warrant a less degree of probative weight.

To the extent that it may be argued, the Board notes that the Court has "expressly declined to adopt a 'treating physician rule' which would afford greater weight to the opinion of a veteran's treating physician over the opinion of a VA or other physician." Winsett v. West, 11 Vet. App. 420, 424-25 (1998) (citing Guerrieri v. Brown, 4 Vet. App. 467, 470-71 (1993); see also Williams v. Brown, 4 Vet. App. 270, 273 (1993) ("Nowhere is it provided in law or regulation that opinions by the examining psychiatrists are inherently more persuasive than that of other competent mental health professionals."). The Court has held, however, that "[a] private medical opinion may not be discounted solely because the opining physician did not review the claims file." Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008). Further, "the Board may not prefer a VA medical opinion over a private medical opinion solely because the VA examiner reviewed the claims file." Id. The level of training, education, and experience of the person conducting the examination is a factor that, if the Board affords more or less weight to the report because of that reason, must be thoroughly explained in its decision. Cox v. Nicholson, 20 Vet. App. 563, 569 (2007) (citing Caluza v. Brown, 7 Vet. App. 498, 506 (1995), aff'd per curiam, 78 F.3d 604 (Fed.Cir.1996)). 

Consideration has also been given to the Veteran's personal assertion that his low back and knee disabilities developed during service, within the first post-service year, or were aggravated as a result of a service-connected disability. However, while lay persons are competent to provide opinions on some medical issues, see Kahana v. Shinseki, 24 Vet. App. 428, 435 (2011), the specific issues in this case fall outside the realm of common knowledge of a lay person. See Jandreau v. Nicholson, 492 F.3d 1372, 1377 n.4 (Fed. Cir. 2007). Chronicity and secondary causation are complex medical matters and are not amenable to probative lay comment regarding etiology. See Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009); Woehlaert v. Nicholson, 21 Vet. App. 456, 462 (2007). 

The Board acknowledges that the Veteran is competent to report observable symptoms, but there is no indication that he is competent to etiologically link any such symptoms to a current diagnosis. He is not shown to possess the requisite medical training, expertise, or credentials needed to render a diagnosis or a competent opinion as to medical causation. Nothing in the record demonstrates that he received any special training or acquired any medical expertise in evaluating such disorders. See King v. Shinseki, 700 F.3d 1339, 1345 (Fed.Cir.2012). Accordingly, the lay evidence does not constitute competent medical evidence and lacks probative value. The lay opinions are also outweighed by the existing medical evidence of record. Therefore, the appellant's claims for entitlement to service connection for low back and bilateral knee disabilities must be denied.

In conclusion, the Board finds that service connection is not warranted. When all the evidence is assembled VA is then responsible for determining whether the evidence supports the claim or is in relative equipoise, with the claimant prevailing in either event, or whether a preponderance of the evidence is against the claim in which case the claim is denied. Gilbert v. Derwinski, 1 Vet. App. 49, 55 (1990); Ortiz v. Principi, 274 F.3d 1361 (Fed. Cir. 2001). The preponderance of the evidence is against the claims.

Increased Rating Claim

Disability evaluations are determined by the application of VA's Schedule for Rating Disabilities (Rating Schedule), 38 C.F.R. Part 4. This Rating Schedule is primarily a guide in the evaluation of disability resulting from all types of diseases and injuries encountered as a result of or incident to military service. The percentage ratings represent as far as can practicably be determined the average impairment in earning capacity resulting from such diseases and injuries and their residual conditions in civil occupations. Generally, the degrees of disability specified are considered adequate to compensate for considerable loss of working time from exacerbations or illnesses proportionate to the severity of the several grades of disability. For the application of this schedule, accurate and fully descriptive medical examinations are required, with emphasis upon the limitation of activity imposed by the disabling condition. Over a period of many years, a veteran's disability claim may require reratings in accordance with changes in laws, medical knowledge and his or her physical or mental condition. It is essential, both in the examination and in the evaluation of disability, that each disability be viewed in relation to its history. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. § 4.1 (2015).

The Board will consider entitlement to staged ratings to compensate for times since filing the claim when the disability may have been more severe than at other times during the course of the claim on appeal. Fenderson v. West, 12 Vet. App. 119 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2007).

It is the responsibility of the rating specialist to interpret reports of examination in the light of the whole recorded history, reconciling the various reports into a consistent picture so that the current rating may accurately reflect the elements of disability present. 38 C.F.R. § 4.2 (2015). Consideration of factors wholly outside the rating criteria constitutes error as a matter of law. Massey v. Brown, 7 Vet. App. 204, 207-08 (1994). Under VA law disabilities may be rated separately without violating the prohibition against pyramiding under 38 C.F.R. § 4.14, unless the disorder constitutes the same disability or symptom manifestations. See Esteban v. Brown, 6 Vet. App. 259, 261 (1994); but see Prokarym v. McDonald, 27 Vet. App. 307, 311 (2015) (holding that 38 C.F.R. § 4.71a, Diagnostic Code 5284, does not apply to the other eight foot conditions specifically listed that pertain to musculoskeletal disabilities of the foot). 

Disability of the musculoskeletal system is primarily the inability, due to damage or infection in parts of the system, to perform the normal working movements of the body with normal excursion, strength, speed, coordination, and endurance. 38 C.F.R. § 4.40 (2015). Functional loss may be due to pain, supported by adequate pathology and evidenced by the visible behavior in undertaking the motion. Id.; see also 38 C.F.R. § 4.59 (2015) (discussing facial expressions such as wincing, muscle spasm, crepitation, etc.). Weakness is as important as limitation of motion, and a part that becomes painful on use must be regarded as seriously disabled. Id. Excess fatigability and incoordination should be taken into account in addition to more movement than normal, less movement than normal, and weakened movement. 38 C.F.R. § 4.45 (2015).

Consideration of a higher rating for functional loss, to include during flare ups, due to these factors accordingly is warranted for Diagnostic Codes predicated on limitation of motion. 38 C.F.R. §§ 4.40 , 4.45, 4.59; DeLuca v. Brown, 8 Vet. App. 202 (1995). Pain itself does not constitute functional loss, and painful motion does not constitute limited motion for the purposes of rating under Diagnostic Codes pertaining to limitation of motion. Mitchell v. Shinseki, 25 Vet. App. 32 (2011). Pain indeed must affect the ability to perform normal working movements with normal excursion, strength, speed, coordination, or endurance in order to constitute functional loss. Id.

Traumatic arthritis is rated pursuant to the criteria found in Diagnostic Codes 5010, which directs that evaluations are to be made pursuant to the criteria for degenerative arthritis found in Diagnostic Code 5003. 38 C.F.R. § 4.71a (2015). Degenerative arthritis established by X-ray findings will be rated on the basis of limitation of motion under the appropriate diagnostic codes for the specific joint or joints involved. When the limitation of motion of the specific joint or joints involved is noncompensable under the appropriate diagnostic codes, a rating of 10 percent is for application for each such major joint or group of minor joints affected by limitation of motion, to be combined, not added under Diagnostic Code 5003. Limitation of motion must be objectively confirmed by findings such as swelling, muscle spasm, or satisfactory evidence of painful motion. In the absence of limitation of motion, a 10 percent rating is warranted with X-ray evidence of involvement of two or more major joints or two or more minor joint groups, and a 20 percent rating is warranted with X-ray evidence of involvement of two or more major joints or two or more minor joint groups, with occasional incapacitating exacerbations. The 20 percent and 10 percent ratings based on X-ray findings will not be combined with ratings based on limitation of motion. 38 C.F.R. § 4.71a, Diagnostic Code 5003, Note (1) (2015).

Diagnostic Code 5279 provides a 10 percent rating for metatarsalgia, anterior (Morton's disease) that is either unilateral or bilateral. 38 C.F.R. § 4.71a, Diagnostic Code 5279 (2015). 

Diagnostic Code 5280 provides a 10 percent rating for hallux valgus, unilateral, for either post-operative with resection of the metatarsal head or if severe and equivalent to amputation of the great toe. 38 C.F.R. § 4.71a, Diagnostic Code 5280 (2015). 

It is the policy of VA to administer the law under a broad interpretation, consistent with the facts in each case with all reasonable doubt to be resolved in favor of the claimant. However, the reasonable doubt rule is not a means for reconciling actual conflict or a contradiction in the evidence. 38 C.F.R. § 4.3 (2015).

The Veteran's increased rating claim was received by VA on April 25, 2007. He contends that his service-connected bilateral anterior metatarsalgia is more severely disabling. In statements and testimony in support of his claim he asserted that he is unable to work because of this disability and that his service-connected foot disability should be rated under the criteria for foot injuries. He stated he could not sit at a desk for more than 1/2 hour and could not work a job that required mobility. His spouse has also provided statements in support of the claim.

On VA examination in September 2007, the Veteran complained of intermittent numbness to the lateral aspects of the feet and weakness, right more than left. Pain was usually present with walking and was estimated as seven on a ten point scale. The pain lasted for about 15 to 20 minutes after he stopped walking. He denied stiffness or swelling, but complained of some burning-type sensation and occasional redness. He denied specific treatment for the feet and stated he used no braces, corrective shoes, nor inserts. He was employed in a company's computer department, described as mainly a desk job, and stated that other than feet pain when he walked around the building he had no problem doing his job because of his foot disabilities. He had no problems with activities of daily living and could stand for 15 to 20 minutes and walk for 1/2 mile without significant pain. 

The examiner noted the Veteran's gait was normal with no antalgia or functional limitations noticed on standing or walking. Gross examination of the feet revealed no evidence of hallux valgus, flatfoot, claw foot, or hammer feet. There was normal gross range of motion to the metatarsophalangeal joints and proximal and distal interphalangeal joints of the feet on active and passive motion testing. There was no change against gravity, resistance, or repetitive motion testing. No pain was reported during motion testing and no change by fatigue or lack of endurance on repetitive use. Tenderness was reported to palpation of the dorsal and plantar aspects of the feet, bilaterally, mainly at the heads of the second to fifth metatarsal bones. There was no evidence of edema, instability, or weakness in movement of the intrinsic foot muscles and no objective evidence of any painful motion. There were symmetrical callosities on the lateral aspect of the mid-foot, bilaterally. There was no unusual shoe wear pattern to support any abnormal weight-bearing. He assumed normal posture on standing and was able to supinate and pronate his feet. He could stand and walk on heels and toes with some difficulty. There was no evidence of loss of height in the arches and no varus or valgus angulation of the foot, midfoot, or forefoot. The diagnoses included bilateral metatarsalgia status post left Morton's neuroma excision. 

VA examination in September 2011 included diagnoses of Morton's neuroma and metatarsalgia. It was noted the Veteran had no current Morton's neuroma, no hallux valgus, and no evidence of other foot injuries. There was pain in the metatarsal areas of the feet estimated as eight on a ten point scale all the time that worsened with standing and walking. It was noted he had very mild hammertoe deformities to the second, third, and fourth toes, bilaterally, of no clinical significance. He used a cane regularly and stated that 30 percent of his cane use was related to his feet. X-ray studies revealed arthritis to the feet, but noted that arthritis was not documented in multiple joints of the same foot. The examiner stated the foot condition did not impact his ability to work. There were small calluses on the fifth metatarsal bone heads, bilaterally, and tenderness to the bilateral heads of the second and fourth metatarsals. Morton's neuroma was noted to be an historical diagnosis only and that there was no evidence of active neuroma or recurrence. 

VA treatment records dated in October 2011 included diagnoses of bilateral metatarsalgia with fat pad atrophy, bilateral hallux valgus, and hyperkeratosis. It was noted that X-ray studies revealed hallus valgus and plantar and posterior heel spurs. Similar findings were provided in podiatry reports dated in October 2012 and October 2013. An October 2014 noted bilateral hallux valgus deformities with prominent bunions, but that the Veteran's orthotics were holding up well. The diagnoses included metatarsalgia, fat pad atrophy, bilateral hallux valgus, and bilateral hyperkeratosis. 

VA foot examination in May 2016 included a diagnosis of bilateral metatarsalgia. It was noted the Veteran reported constant pain in the feet which increased with walking, but that he did not report flare-ups. He reported having vocational limitations due to his foot disabilities. The examiner noted he had no hallux valgus or other foot injuries, but that he continued to have bilateral foot pain. There was functional loss and limitation of motion with contributing factors of disability, bilaterally, including pain on movement, pain on weight-bearing, disturbance of locomotion, and interference with standing. There was no evidence of pain, weakness, fatigability, or incoordination that significantly limits functional ability during flare-ups or when the foot is used repeatedly over a period of time. Nor other pertinent physical findings, complications, conditions, signs or symptoms related to the service-connected disability. It was noted that the Veteran had been on SSA disability since January 2011 and had previously worked in computer-aided design, which was mainly a desk job but that he was also required to get up on machines and crawl into places. He reported that he was laid off from the job due to the economic recession and was not terminated due to his foot condition. He reported he was independent in his basic activities of daily living and that he continued to do gardening around the house. H was able to work outside for approximately an hour before taking a break, but got assistance with activities such as snow removal from his neighbors. The examiner noted that the Veteran had several nonservice-connected conditions that affect his functional status, a bilateral knee condition with recent total knee replacement, a neck condition status post surgery, and a back condition status post surgery. 

Based on a review of his treatment records over the previous year, those disabilities were found to limit his function more than his service-connected foot disability. The examiner found that considering his service-connected foot disability the Veteran should be able to work an 8-hour day and that there was no limitation to his ability to do sedentary work. It was recommended, in essence, that his standing and walking be limited to no more than an hour at a time and he should then be allowed to return to a sitting position. Due to his foot condition he should be limited to lifting no more than 25 pounds on a regular basis. There was no limitation to his bending crawling or kneeling, but his climbing stairs or climbing ladders should be limited to an infrequent basis. These limitations were noted to be without regard to his age or nonservice-connected conditions. There were no vocational limitations with regard to the medications taken for his service-connected foot disability.

In consideration of the foregoing, the Board finds that the Veteran's bilateral anterior metatarsalgia disability is manifested by arthritis and painful motion in the right and left feet. VA records show the Veteran has been in receipt of a 10 percent disability rating for his bilateral anterior metatarsalgia the maximum available schedular rating under diagnostic code 5279 since May 3, 1977. A review of the evidence, however, includes medical evidence indicating that manifestations of the foot disability incurred in service or which have developed as a result of the service-connected disability may be more advantageously to the Veteran evaluated under alternative diagnostic codes and rating criteria. As the evidence shows the Veteran has developed arthritis to the right and left feet with objective evidence of painful motion, his service-connected foot disabilities are found to be more appropriately evaluated under the criteria for arthritis under diagnostic code 5010. See Butts v. Brown, 5 Vet. App. 532, 539 (1993) (holding that the Board's choice of diagnostic code should be upheld so long as it is supported by explanation and evidence). Therefore, the Board finds that alternative separate 10 percent ratings for right and left foot arthritis associated with bilateral anterior metatarsalgia are warranted.

The Veteran contends that his service-connected disability should be evaluated as other foot injuries under diagnostic code 5284. However, there is no evidence of a foot injury in service other than as the basis for the specific diagnoses for which service connection has been established or associated. See Prokarym v, 27 Vet. App. 307. It is further noted that service treatment records include a July 1976 X-ray study demonstrating bilateral hallux valgus deformities and that various post-service medical reports have included diagnoses of bilateral hallux valgus. Other medical reports, however, have found no evidence of hallux valgus. 

Overall, providing the Veteran the benefit of all doubt as to this matter, there is no evidence that his hallux valgus to either the right or left foot is manifest either by post-operative with resection of the metatarsal head or severe hallux valgus that is equivalent to amputation of the great toe for which separate compensable ratings could be assigned. See 38 C.F.R. § 4.71a, Diagnostic Code 5280. Similarly, there is no evidence a moderate acquired flatfoot impairment or hammer toes to all toes. See 38 C.F.R. § 4.71a, Diagnostic Codes 5276, 5282. The Board also notes that VA records show service connection is separately established for an associated left foot scar, but that this matter has not been developed for appellate review. See 38 C.F.R. § 4.118, Diagnostic Code 7805. As such, the Board finds that higher schedular or alternative ratings under the criteria for diagnostic codes 5276, 5280, 5282, 5284, and 7805 are not applicable in this case. 

The Board acknowledges that the Veteran and his spouse are competent to report symptoms of a foot disability. See Barr v. Nicholson, 21 Vet. App. 303 (2007); Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007); Layno v. Brown, 6 Vet. App. 465 (1994). They are not, however, competent to identify a specific level of disability nor to diagnose additional or secondary disabilities. Such competent evidence concerning the nature and extent of the Veteran's service-connected bilateral anterior metatarsalgia disability has been provided by VA medical professionals who examined him. The medical findings adequately address the criteria under which this disability is evaluated. The Board accords the objective medical findings greater weight than subjective complaints of increased symptomatology. See Cartwright v. Derwinski, 2 Vet. App. 24, 25 (1991). 

The Board has not overlooked the fact that the Veteran experienced pain. However, pain must affect the ability to perform normal working movements with normal excursion, strength, speed, coordination, or endurance in order to constitute functional loss. See Mitchell v. Shinseki, 25 Vet. App. 32 (2011). Such was addressed in the aforementioned VA examinations and is the basis for the award of alternative separate ratings in this case. Although the Veteran complained of more severely disabling foot problems, there is no evidence other than as described herein demonstrating any additional loss of motion or functional loss that affected his ability to perform normal working movements with normal excursion, strength, speed, coordination, or endurance. The assigned alternative separate ratings adequately represent the Veteran's degree of impairments based upon the overall evidence of record including during flare-ups. The preponderance of the evidence in this case is against the claim for any higher ratings.

Extra-Schedular Rating Consideration

Consideration has also been given to whether the schedular evaluation is inadequate, thus requiring that the RO refer a claim to the Under Secretary for Benefits or the Director, Compensation and Pension Service, for consideration of "an extra-schedular evaluation commensurate with the average earning capacity impairment due exclusively to the service-connected disability or disabilities." 38 C.F.R. § 3.321(b)(1) (2015); Barringer v. Peake, 22 Vet. App. 242, 243-44 (2008) (noting that the issue of an extra-schedular rating is a component of a claim for an increased rating and referral for consideration must be addressed either when raised by the veteran or reasonably raised by the record). Under Johnson v. McDonald, 762 F.3d 1362, 1365-66 (Fed. Cir. 2014), a Veteran may be awarded an extraschedular rating based upon the combined effect of multiple conditions in an exceptional circumstance where the evaluation of the individual conditions fails to capture all the service-connected disabilities experienced. 

In determining whether an extra-schedular evaluation is for consideration, the Board must first consider whether there is an exceptional or unusual disability picture, which occurs where the diagnostic criteria do not reasonably describe or contemplate the severity and symptomatology of a Veteran's service-connected disability. See Thun v. Peake, 22 Vet. App. 111, 115 (2008). If there is an exceptional or unusual disability picture, the Board must next consider whether the disability picture exhibits other factors such as marked interference with employment and frequent periods of hospitalization. Id. at 115-16. When those two elements are met, the appeal must be referred for consideration of the assignment of an extra-schedular rating. Otherwise, the schedular evaluation is adequate, and referral is not required. 38 C.F.R. § 3.321(b)(1) (2015); Thun, 22 Vet. App. at 116.

Service connection is now established for arthritis and painful motion in the right foot associated with an anterior metatarsalgia disability (10 percent); arthritis and painful motion in the left foot associated with an anterior metatarsalgia disability (10 percent); and a left foot scar (0 percent). The schedular evaluations in this case are not shown to be inadequate. When comparing the Veteran's disability picture with the symptoms contemplated by the Rating Schedule, the Board finds that based upon available evidence and argument the objective manifestations of the service-connected disabilities are congruent with the disability picture represented by the disability ratings assigned herein. The examiners have clearly noted the Veteran's manifest symptoms and impairments due to these disorders. 

Given the foregoing, the Board concludes that the schedular rating criteria reasonably describe the Veteran's disability picture. In short, there is nothing exceptional or unusual about the Veteran's specific disabilities because the rating criteria reasonably describe his disability level and symptomatology. In this case, after applying the benefit of the doubt under of Mittleider v. West, 11 Vet. App. 181 (1998), there are no additional service-connected disabilities that have not been attributed to a specific service-connected condition. Therefore, referral is not warranted.

TDIU

A total rating for compensation may be assigned where the schedular rating is less than total when it is found that the disabled person is unable to secure or follow a substantially gainful occupation as a result of a single service-connected disability ratable at 60 percent or more or as a result of two or more disabilities, provided at least one disability is ratable at 40 percent or more, and there is sufficient additional service-connected disability to bring the combined rating to 70 percent or more. For the above purpose of one 60 percent disability, or one 40 percent disability in combination, the following will be considered as one disability: (1) Disabilities of one or both upper extremities, or of one or both lower extremities, including the bilateral factor, if applicable, (2) Disabilities resulting from common etiology or a single accident, (3) Disabilities affecting a single body system, e.g. orthopedic, digestive, respiratory, cardiovascular-renal, neuropsychiatric, (4) Multiple injuries incurred in action, or (5) Multiple disabilities incurred as a prisoner of war. It is provided further that the existence or degree of nonservice-connected disabilities or previous unemployability status will be disregarded where the required percentages for the service-connected disability or disabilities are met and in the judgment of the rating agency such service-connected disabilities render the veteran unemployable. Marginal employment shall not be considered substantially gainful employment. For purposes of this section, marginal employment generally shall be deemed to exist when a veteran's earned annual income does not exceed the amount established by the United States Department of Commerce, Bureau of the Census, as the poverty threshold for one person. Marginal employment may also be held to exist, on a facts found basis (includes but is not limited to employment in a protected environment such as a family business or sheltered workshop), when earned annual income exceeds the poverty threshold. 38 C.F.R. § 4.16(a) (2015). 

It is the established policy of VA that all veterans who are unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities shall be rated totally disabled. Rating boards are to refer to the Director of the Compensation Service for extraschedular consideration all cases of veterans who are unemployable by reason of service-connected disabilities but who fail to meet the percentage requirements. 38 C.F.R. § 4.16(b) (2015). 

Total disability will be considered to exist when there is present any impairment of mind or body which is sufficient to render it impossible for the average person to follow a substantially gainful occupation. 38 C.F.R. § 3.340(a) (2015). A Veteran's service-connected disabilities, employment history, educational and vocational attainment, and all other factors having a bearing on the issue must be addressed. Age may not be considered as a factor in evaluating service-connected disability; and unemployability, in service-connected claims, associated with advancing age or intercurrent disability, may not be used as a basis for a total disability rating. 38 C.F.R. § 4.19 (2015).

The sole fact that a claimant is unemployed or has difficulty obtaining employment is not enough. A high rating in itself is a recognition that the impairment makes it difficult to obtain and keep employment. The question is whether the veteran is capable of performing the physical and mental acts required by employment, not whether the veteran can find employment. Van Hoose v. Brown, 4 Vet. App. 361 (1993). 

The applicable regulations place responsibility for the ultimate TDIU determination on the VA, not a medical examiner. Geib v. Shinseki, 733 F.3d 1350, 1354 (Fed.Cir.2013). TDIU is to be awarded based on the judgment of the rating agency. Floore v. Shinseki, 26 Vet.App. 376, 381 (2013).

Even with the award of separate 10 percent ratings for his foot disabilities, the Veteran does not meet the schedular criteria for a TDIU rating. See 38 C.F.R. § 4.16(a). His combined rating is now 20 percent. However, the Board must consider whether the evidence warrants entitlement to a TDIU on an extraschedular basis under the provisions of 38 C.F.R. § 4.16(b). 

The Veteran contends that he has been unable to work as a result of his service-connected disabilities. He has stated that because of his service-connected disabilities he could not sit at a desk for more than 1/2 hour and could not work a job that required mobility. The pertinent evidence as to the Veteran's employment history and educational and vocational attainment is adequately addressed in the available record and is not in dispute. He is shown to have been determined to be unemployable for SSA disability purposes since January 2011 and to have had significant prior work experience working with computers and in computer-aided design.

Based upon the overall record, the Board finds the evidence demonstrates the Veteran service-connected disabilities do not render him unable to secure and follow a substantially gainful occupation. The evidence as to the extent of impairment due to his service-connected foot disabilities has been considered. The degree of occupational impairment due to his service-connected left foot scar is also adequately demonstrated by the evidence of record. 

The Board finds that the opinion of the May 2016 VA foot examiner is persuasive as to this matter. The examiner is shown to have conducted a thorough examination of the Veteran, including his residual surgical scar, and to have extensively reviewed the pertinent evidence of record. Significantly, the examiner found that the Veteran's nonservice-connected knee, cervical spine, and lumbar spine disabilities limited his function more than his service-connected foot disability. The examiner specifically found that considering his service-connected foot disability the Veteran should be able to work an 8-hour day and that there was no limitation to his ability to do sedentary work. The Board finds that the recommended restrictions on employment, identified by the examiner as limiting standing and walking to no more than an hour at a time with return to a sitting position, limited lifting no more than 25 pounds on a regular basis, and limiting climbing stairs or climbing ladders to an infrequent basis, are reasonable employment accommodations that would not themselves render the Veteran unable to secure and follow a substantially gainful occupation in a computer-aided design job. 

While the Veteran is competent to report symptoms believed to be associated with his service-connected disabilities, he is not competent to identify a specific level of disability. Competent evidence concerning the nature and extent of the Veteran's service-connected disabilities have been provided by VA medical professionals who have examined him. The Board accords these objective records greater weight than any subjective complaints of symptomatology. See Cartwright v. Derwinski, 2 Vet. App. 24, 25 (1991). Therefore, entitlement to a TDIU is not warranted.

 (ORDER ON NEXT PAGE)

ORDER

Entitlement to service connection for a low back disability, to include as secondary to a service-connected bilateral foot disability, is denied.

Entitlement to service connection for a bilateral knee disability, to include as secondary to a service-connected bilateral foot disability, is denied.

Entitlement to an alternative, separate, 10 percent rating for arthritis to the right foot as a result of bilateral anterior metatarsalgia is granted, subject to the regulations governing the payment of monetary awards.

Entitlement to an alternative, separate, 10 percent rating for arthritis to the left foot as a result of bilateral anterior metatarsalgia is granted, subject to the regulations governing the payment of monetary awards.

Entitlement to a TDIU is denied.

____________________________________________
MICHAEL A. HERMAN
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs